## Case No. 13,038.

### SMITH v. DREW et al.

[10 Ben. 614.] [1]

District Court, S. D. New York. Nov.. 1879.

CHARTER PARTY—TONNAGE DUES—PORT CHARGES —ACCOUNT STATED—PRESUMPTION.

1. S., the master of a schooner, chartered her in Jacksonville, Florida, to D. and B., to carry a cargo of lumber to Cape Haytien, "charterers to pay all the vessel's port charges at Cape Haytien, including pilotage, consul's fees," etc. The vessel took the cargo and delivered it at Cape Haytien to L., the consignee named in the bill of lading, who was a contractor for the building of a dock for which the lumber was destined, and who had an agreement with the Haytian government that vessels coming to the ports of Hayti. laden exclusively with materials for the dock and clearing in ballast for a foreign port, were exempted from tonnage dues.

1 [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

This agreement was not known to either of the parties to the charter before the arrival of the vessel at Cape Haytien, and before her arrival the master had executed another charter to take a cargo from Miragoane, another Haytian port. By the laws of Hayti the schooner, before clearing from Cape Haytien for Miragoane, was bound to pay $381 of tonnage dues. The master claimed that under the charter the charterers were bound to pay the tonnage dues, as being "port charges." The consignee refused to pay them except by deducting them from the freight. This, therefore, he did, and took a receipt for the rest of the freight money, which read that it was "in full for freight. * * * less advances, tonnage dues, etc., paid for my account," which the master signed and he also made a protest against the deduction. The master then filed a libel against the charterers to recover the $381: *Held,* that the tonnage dues payable at Cape Haytien for the cargo to be taken on board at Miragoane were port charges payable by the charterers.

2. The parties being ignorant of the consignee's agreement when the charter was made, their rights, under the charter, were not affected by it.

3. The presumption would be, not that the vessel was going to leave Cape Haytien in ballast, but that she would take an outward cargo.

4. The giving the receipt did not, under the circumstances, constitute an account stated between the parties, and the libellant was entitled to recover.

[This was a libel by John Smith against George F. Drew and Louis Bucki to recover a balance of freight money.]

R. D. Benedict, for libellant.

G. H. Fletcher, for respondents.

CHOATE, District Judge. This is a suit on a charter party to recover an alleged balance of $381 of the freight money. The charter was executed in Jacksonville, Florida, on the 20th day of March, 1877, between the libellant, master of the schooner Col. S. W. Razee of Philadelphia, and the respondents Drew and Bucki, lumber merchants. The charter was of the whole of said vessel, with the usual necessary exceptions, for the carriage of a cargo of lumber at a certain stipulated freight, to the port of Cape Haytien in the republic of Hayti, "charterers to pay all the vessel's port charges at Cape Haytien, including pilotage, consul's fees," etc. The vessel gave bills of lading under which the cargo was deliverable to one Loynez at Cape Haytien, and in due course she arrived at that port and delivered her cargo. The freight amounted to $1785.19. When the master came to settle his account with the consignee, Loynez, he received $1069.59, Loynez charging him with $715.60 as disbursements advanced on account of the vessel. This sum of $715.60 included, besides other sums not objected to, the sum of $381 tonnage dues paid at Cape Haytien. The captain objected to this charge, claiming that under the charter the charterers were obliged to pay the tonnage dues as a port charge at Cape Haytien. By the laws of Hayti the captain could not clear the vessel without the payment of these tonnage dues, and the consignee positively refused to pay them except by taking them out of the

freight money due; and the captain, in order to clear his vessel and having no other means to do so, accepted the balance which the consignee offered, protesting against the same, and signed a receipt therefor drawn up by the consignee. This receipt was as follows: "Received from C. F. Loynez in a draft on Pierson & Co., New York, at 30 days, the sum of 1069 $59/100$ dollars in full for freight of a cargo of lumber per the schooner Col. S. W. Razee, less advances, tonnage dues, etc., paid by him for my account. Signed in duplicate, Cape Haytien, May 3, 1877. John Smith." Immediately after this settlement the master noted a protest before the American consul.

By the laws of Hayti every foreign vessel bringing cargo to a port in the country was chargeable with tonnage dues which, by law, were required to be paid at her first port of discharge before she could be cleared from that port, and whether she left in ballast or with cargo for a port out of Hayti or for another port of Hayti to take on there her return cargo. If she went to another port in Hayti she also paid at her first port a fee for changing ports. The cargo of lumber carried out by this schooner was for the use of the contractors to build a wharf at Cape Haytien, who had a special convention with the government of Hayti, under which vessels coming to the port of Cape Haytien, laden exclusively with materials for this new wharf and clearing in ballast for a foreign port, were exempted from the payment of the usual tonnage dues. It did not appear that this special agreement was known to either of the parties to this charter-party prior to the arrival of the vessel at Cape Haytien, and by a charter for a return cargo, entered into by the libellant before his arrival at Cape Haytien, the vessel was bound to go to Miragoane, another port in Hayti, to load with a cargo, thence to Boston. She was therefore liable, before she could clear from Cape Haytien on her projected homeward voyage, to pay this sum of $381 tonnage dues at Cape Haytien. And soon after her arrival a question arose between the captain and the consignee as to whether the consignee or the ship should pay it. At the time this matter was arranged, as above stated, it was understood between the captain and the consignee that the captain would make a claim on the charterers for this sum which the consignee refused to pay otherwise than out of the freight money.

Several objections are now made by the charterers to the recovery of this sum: (1) that tonnage dues are not port charges; (2) that, if tonnage dues are port charges, yet these dues, though payment was required at Cape Haytien, were not levied as tonnage dues for that port, but as tonnage dues for the port of Miragoane, and therefore, and under the particular facts of this case, that they were not tonnage dues "at Cape Haytien" within the meaning of this charter-party which the charterers were bound to pay; and (3) that the libellant is precluded from claiming this sum

from the charterers by his assenting to an account stated and by his receipt of the balance paid him in full of that account at Cape Haytien.

1. I think there can be no question that tonnage dues are port charges.

2. The claim that these were dues for the port of Miragoane rests on the testimony of certain government officials at Cape Haytien, that this exaction is made, not for the port of discharge, but for the port where the return cargo is taken on board. They indeed give it as their opinion and understanding that the tax is levied on account of the cargo exported, but as it is uniformly exacted at the first port at which the vessel arrives, I think it is properly described, and must be held to be within the contemplation of both parties, a port charge at that port, whatever may be the grounds which actuate the government in imposing it. All that parties entering into such a contract in a foreign country can be presumed to know about it is, that it is exacted at the first port, and therefore it is properly to be considered as a port charge of or at that port, as they look at the matter. The distinction drawn by these witnesses is, it seems to me, a distinction without a difference, so far as this contract is concerned. It is said, however, that, in this particular case, if the vessel had come home in ballast from Cape Haytien she would not have been chargeable with any tonnage dues, and hence it is argued that as this charter-party provides for the outward voyage only, ending with the delivery of the cargo, it was not within the purview of the contract that the charterers should be made chargeable with any burden to enable the ship to bring home a return cargo, and that neither legally nor equitably is the libellant entitled to charge this payment on the charterers under this charter-party. The answer to this argument is, I think, conclusive that the parties must have contemplated the payment of tonnage dues, since the private agreement between the consignee and the government did not enter into their calculations, and the mere fact that by that agreement the consignee was relieved from paying it should not charge it upon the ship as between her and the charterers, nor can this court assume, as insisted on the part of the respondents, that the ship, within the contemplation of the parties to this contract, was to return from Hayti without cargo. On the contrary, there being nothing in the charter to restrict the ship-owner in this respect, this court will assume that it was understood that the ship would bring back a cargo if the same could be obtained. I see no equity in the respondents' position if these dues are properly held to be port charges at Cape Haytien, for it is distinctly agreed that the ship shall not be charged with them, and so far as either party knew when the contract was made they had to be paid, and certainly not by the ship.

3. The defence of an account stated cannot avail the respondents, because the captain did all that he could do to induce the consignee to pay these charges, and simply took all he could get of the freight from the consignee, without waiving any rights against the charterers. He was compelled to submit in order to clear his vessel, and the settlement that he made did not purport and was not understood by either party to be a settlement with the charterers, but only with the consignee of the cargo, who claimed that he was relieved of the charge by favor of the government, and did not profess or undertake to settle the account as between the ship and the charterers. It is evident that a clear case is made out which overcomes the prima facie case made by the account and receipt. The recital in the receipt that the payment was on the captain's account, was inserted by the consignee; so far as appears, it was not specially called to the attention of the captain and is inconsistent with the fact, as proved by the evidence.

Decree for libellant for $381 and interest from May 3, 1877, and costs.